## Vastine's Appeal.

*Wages of Miners, Mechanics, and Labourers, preference over Execution Creditors.*

Under the 3d section of the Act of 2d April 1849, the claims of miners, mechanics, and labourers, not exceeding $50 each, are entitled to a preference over execution-creditors, where the fund for distribution arises from the sale of the debtor's personal property.

APPEAL from the Common Pleas of *Schuylkill county*.

This was an appeal by Lewis Vastine, from the decree of the court below, reversing the report of the auditor appointed by the court to distribute the proceeds of the sheriff's sale of the personal property in and about a certain spike or nail forge of Nathan L. and Thomas J. Attwood. The contest was between the execution-creditors and certain mechanics and labourers employed by the Messrs. Attwood at this forge, who claimed a preference by virtue of the 3d section of the Act of April 2d, 1849, entitled "An Act for the protection of miners, mechanics and labourers." The facts of the case were not disputed. The auditor, under the authority of Wood's Appeal, 6 Casey 274, rejected the claims of the mechanics and labourers, and distributed the money to the execution-creditor.

Exceptions were filed to this report, and on argument, the court below reversed the decision of the auditor, and decreed that the miners, mechanics, and labourers be paid their respective amounts, and that the surplus be paid to the execution-creditors. The case was then removed into this court, where the decree of the court, as above stated, was assigned for error.

*Thomas R. Bannan*, for appellants, argued that the Act of March 30th 1859, "for the better securing the payment of the wages of labour in the county of Schuylkill," repealed the provisions of the Act of 1849 only so far as it relates to "labourers, &c., employed in and about coal-mines," and that as this was the case of labourers employed in and about a spike or nail forge, and not included in the Act of 1859, it depended on the construction given to the Act of 1849 in Wade's Appeal, 5 Casey 328, and Wood's Appeal, 6 Casey 374, which decide that miners, mechanics, and labourers are not entitled to this preference.

*William R. Smith* and *J. W. Roseberry*, for appellees.—The cases cited on the other side are not in point; Wade's Appeal decided only that the wages of miners and labourers were not entitled to any preference over liens of record in distributing the proceeds of real estate. Wood's Appeal was a controversy

·[Vastine's Appeal.]   ·

between a landlord and the miners and labourers, in which the landlord was preferred, on the ground that his lease was given before the Act of 1849. But Reed's Appeal, 6 Harris 235, is precisely like this case, and rules it.

The opinion of the court was delivered, February 4th 1861, by
WOODWARD, J.—We agree with the counsel of the plaintiff in error that the question on this record depends entirely on the 3d section of the Act of 1849, passed for the protection of miners, mechanics, and labourers, in certain counties, and is no wise affected by the Act of 30th March 1859, the provisions of which are limited to collieries and coal mining, and do not extend to forges and factories.

Then does the 3d section of the Act of 1849 entitle mechanics and labourers to a preference over execution-creditors whose process has raised the fund by a sheriff's sale of the debtor's personalty? The section is badly expressed. It provides no mode of ascertaining the just claims of labourers, while it requires the officer to pay them out of the proceeds of the sale, " the amount each is justly and legally entitled to receive," not exceeding $50, " in like manner as rents are now payable in such cases." Notwithstanding the difficulty of interpreting and executing a law couched in such obscure phraseology, we think the legislature meant to give such claims as labourers should set up, not exceeding $50, a preference over the rights of execution-creditors, where the money for distribution arises from sale of personal property. Unless this were intended we cannot see what possible effect the enactment could have. The personalty can be converted into money by creditors only by an execution sale, and if on distribution of the proceeds, they may exclude the labourers, the act is nugatory, for the creditors are forbidden by law to raise more money than is sufficient to pay themselves. The creditors have no lien on the personalty before they take execution, and when their executions go into the sheriff's hands the lien they acquire is a common law and not a statutory lien. Whilst we do not in general allow statutes to be repealed by implication, and refused in Wade's Appeal, 5 Casey 328, to give labourers a preference in distribution of the proceeds of real estate over judgment-creditors whose liens vested by statute, nothing is more common than for a rule of the common law to give way before an inconsistent statute. And we think the legislature meant, in this instance, to postpone the common law lien of the execution-creditor to the claims of the labourers. In Reed's Appeal, 6 Harris 235, this preference of labourers was recognised as extending to the personal estate generally of the employer. In Wood's Appeal, 6 Casey 279, it was denied as against a landlord's statutory right to a year's rent, on the same

ground that was assumed in the previous case of Wade's Appeal; at least the ruling in Wood's Appeal can be justified on that ground.

But here the creditors stand on no statutory lien. If they did, we should require express evidence of the legislative intention to repeal the statute giving the lien. They have nothing to urge but their common law rights, and these must yield to the statutory rights of the labourers.

The decree of distribution is affirmed.